UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CITY OF ASHTABULA<br>110 West 44th Street, Unit 2<br>Ashtabula, OH 44004<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>NORFOLK SOUTHERN CORPORATION<br>Three Commercial Place<br>Norfolk, VA 23510<br>c/o Statutory Agent<br>Roger A. Petersen<br><br>and<br><br>NORFOLK SOUTHERN RAILWAY<br>COMPANY<br>Three Commercial Place<br>Norfolk, VA 23510<br>c/o Statutory Agent<br>CT Corporation System<br>1300 E. Ninth Street<br>Cleveland, OH 44114<br><br>　　　Defendants. | CASE NO. _____<br><br>JUDGE _____<br><br>JURY DEMAND ENDORSED<br>HEREON |

**COMPLAINT**
**(with Jury Demand)**

Plaintiff City of Ashtabula, for its complaint against defendants, alleges as follows:

### **NATURE OF ACTION**

1.　　Plaintiff City of Ashtabula ("City") brings this action against Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company (collectively, "Norfolk

1

211188v2
32010.00004

Southern") under the citizen suit provision of the Federal Water Pollution Control Act, as amended, 33 U.S.C. §§ 1251, et seq., (the "CWA") concerning past and continuing CWA violations at Norfolk Southern's coal dock facility located in Ashtabula, Ohio.

2. Norfolk Southern has caused and permitted coal, coal dust, coal slurry, and coal-contaminated water to be discharged into Lake Erie and the Ashtabula River. The discharges violate a CWA permit issued to Norfolk Southern Railway Company by the Ohio Environmental Protection Agency. The discharges also constitute unpermitted discharges in violation of the CWA.

3. The City also brings this action against Norfolk Southern under the citizen suit provision of the federal Clean Air Act, 42 U.S.C. §§ 7401, et seq., (the "CAA") concerning past and continuing violations of the CAA at Norfolk Southern's coal dock facility.

4. Visible particulate emissions from the Norfolk Southern coal dock have caused, and will continue to cause, a public nuisance endangering the public health and welfare of the City's residents, damaging property, and interfering with the City's residents' enjoyment of personal and public property.

5. The City seeks injunctive relief, imposition of civil penalties and costs of the litigation (including attorney fees and expert witness fees).

## PARTIES

6. Plaintiff City of Ashtabula is a charter municipality as provided under Article XVIII, Section 7 of the Ohio Constitution.

7. The City is a "citizen" and "person" as defined in CWA Section 505, 33 U.S.C. § 1365; and CWA Section 502, 33 U.S.C. § 1362(5) and CAA Section 302(e), 42 U.S.C. § 7602(e), respectively.

8. The violations alleged in this complaint have impaired the City's air quality.

9. The violations alleged in this complaint have injured, and will continue to injure, the City's aesthetic appeal by polluting the air and water and destroying the City's beauty and character.

10. The violations alleged in this complaint, including without limitation the deposition of coal and coal dust in the Ashtabula River, Lake Erie, and the surrounding area, have made Sutherland Marine, The Ashtabula Yacht Club, Kister Marina, the Ashtabula River and Lake Erie less attractive, which has harmed the City's tourism industry. Sales tax revenue generated from tourism has thus decreased, causing injury to the City.

11. The City's residents and taxpayers live, work, recreate, and conduct other activities in the City of Ashtabula, in and around Lake Erie, on and around the Ashtabula River, and in other areas affected by the violations alleged in this complaint.

12. The City's residents and taxpayers have suffered, and will continue to suffer, actual and threatened injury to their health and welfare due to the violations alleged in this complaint.

13. Further, the City's residents and taxpayers have suffered, and will continue to suffer, actual and threatened interference with their use and enjoyment of property and surrounding area from the violations alleged in this complaint, including but not limited to the deposition of coal and coal dust in Lake Erie, the Ashtabula River and on their properties.

14. Defendant Norfolk Southern Corporation, a Virginia corporation, is the holding company for Defendant Norfolk Southern Railway Company, a major freight railroad. Norfolk Southern Railway Company is primarily engaged in the rail transportation of raw materials, intermediate products and finished goods primarily in the Southeast, East and Midwest.

15. Defendants Norfolk Southern own and operate the Ashtabula Coal Dock Facility located at 10 Bridge Street, Ashtabula, Ashtabula County, Ohio (the "Coal Dock"), which is located within the municipal corporation limits of the City.

16. Each of the defendants is a "person" within the meaning of CWA Section 502, 33 U.S.C. § 1362(5) and CAA Section 302(e), 42 U.S.C. § 7602(e).

17. The U.S. Attorney General, US EPA Administrator, as well as the Ohio Attorney General's Office and the Director of Ohio EPA, are served with a copy of this Complaint as required by the citizen suit provisions of the CWA and the CAA.

## JURISDICTION

18. This action arises under CWA Section 505, 33 U.S.C. § 1365, against Norfolk Southern for past and continuing violations of CWA Sections 301(a) and 402 and of the CWA permit issued to Norfolk Southern.

19. This action also arises under CAA Section 304, 42 U.S.C. § 7604, against Norfolk Southern for past and continuing violations of the CAA.

20. Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365(a) (CWA jurisdiction), and 42 U.S.C. § 7604(a) (CAA jurisdiction). An actual, justiciable controversy exists between Plaintiff and Defendant.

21. The citizen suit provisions of the CWA and CAA grant jurisdiction to United States District Courts to issue an injunction remedying violations of the CWA and the CAA, to impose appropriate civil penalties for violations of the CWA and the CAA, and to award costs of litigation (including reasonable attorney and expert witness fess).

22. Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1) and 42 U.S.C. § 7604(c)(1) because Norfolk Southern's Coal Dock is located in this district.

4

## NOTICE

23.     On November 26, 2008, the City gave notice to Norfolk Southern for the violations of the CWA and the CAA alleged in this Complaint, as required by 33 U.S.C. § 1365(a) and by 42 U.S.C. § 7604(a). Copies of the letter were sent to the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region 5, the Director of the Ohio Environmental Protection Agency ("Ohio EPA"), the Chief of the Division of Air Pollution Control of Ohio EPA, the Chief of the Division of Surface Water of Ohio EPA and the Governor of Ohio. A copy of the Notice Letter is attached to this complaint as Exhibit A and incorporated by reference herein.

24.     More than sixty days have elapsed since the notice described in the preceding paragraph was properly served and neither EPA nor Ohio EPA has commenced and is diligently prosecuting a civil or criminal action in a court to redress the violations.

## STATUTORY AND REGULATORY BACKGROUND

### The Clean Water Act

25.     Section 301 of the CWA prohibits the "discharge of any pollutant by any person" without a proper permit. 33 U.S.C. § 1311(a). A "discharge" is "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). A "pollutant" includes solid waste, rock, sand, and industrial waste. 33 U.S.C. § 1362(6).

26.     Section 402(a) of the CWA requires the prospective discharger of a pollutant to obtain a permit from EPA or the relevant state permitting authority before discharging the pollutant from a point source. 33 U.S.C. § 1342(a). A "point source" includes "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, [and] conduit ... from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

5

27. In addition, Section 402(p) of the CWA requires entities to obtain discharge permits before discharging storm water that contains pollutants. 33 U.S.C. § 1342(p); 40 C.F.R. § 122.26(a)(6).

28. CWA Section 301, 33 U.S.C. § 1311, requires compliance with all terms and conditions included in a permit issued pursuant to CWA Section 402, 33 U.S.C. § 1342.

**The Clean Air Act**

29. A central purpose of the CAA is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

30. To achieve this and other purposes, the states bear primary responsibility under the CAA for regulating sources of air pollution and attaining ambient air quality standards. See, e.g., 42 U.S.C. §§ 7401 (state responsibility) and 7410 (state implementation plans).

31. Under Section 110(a) of the CAA, 42 U.S.C. § 7410(a), states implement many of the regulatory requirements of the CAA through State Implementation Plans ("SIPs"). SIP provisions must satisfy the requirements of the CAA before they are approved by EPA. 42 U.S.C. § 7410(k).

32. In general, SIPs consist of state laws, regulations, and permits and must provide for attainment and maintenance of the National Ambient Air Quality Standards in each region of the state. Once approved by EPA, SIPs become federal law and are enforceable by the state, EPA, and citizens.

33. EPA has approved the Ohio SIP. 40 C.F.R. § 52.1873.

34. Under Ohio law, and as approved by EPA in the Ohio SIP, it is unlawful for any person to cause a public nuisance, which is defined as the emission or escape into the open air

from any source of dust, dirt, grime or any other substances in such a manner or in such amounts as to endanger the health, safety or welfare of the public or to cause unreasonable injury or damage to property.  OAC Rule 3745-15-07.

## FACTS

35.  The Coal Dock is bordered to the north by Lake Erie, to the east by other commercial docks, to the south by Route 531, and to the west by residential and commercial properties.  The Coal Dock is located on the east and west banks of the Ashtabula River.

36.  Coal is delivered to the east bank of the Coal Dock in rail cars, dumped from the rail cars, loaded onto a conveyor belt ("Conveyor Belt No. 2"), which transfers the coal across the Ashtabula River from the east bank to the west bank of the Coal Dock, and stored in piles until loaded onto lake vessels for delivery.  Coal storage piles on the west bank of the Coal Dock are several stories high.

37.  Norfolk Southern operates a water treatment plant to treat the water runoff from the west bank of the Coal Dock.  The runoff is a combination of rain water, snow melt and water sprayed on the coal piles to suppress dust.  The coal piles are sprayed using stanchion mounted sprinklers and by mobile trucks.  The spray process is required year round.

38.  The water runoff from operations on the west bank of the Coal Dock is to be collected and/or conveyed to the treatment plant prior to discharge to Lake Erie at the outfall (Outfall 001) pursuant to its National Pollutant Discharge Elimination System ("NPDES") Permit No. 3IT00011 (the "NPDES Permit").

39.  Part III.11 of the NPDES Permit states that bypassing or diverting of the wastewater treatment plant is prohibited except in extreme circumstances.

211188v2
32010.00004

40. Norfolk Southern does not possess a NPDES permit for any operations on the east bank of the Coal Dock or for Conveyor Belt No. 2.

41. Water is sprayed onto the coal as it is transported by Conveyor Belt No. 2 across the Ashtabula River. Water is also periodically used to clean Conveyor Belt No. 2.

42. Coal, coal dust, coal slurry, and coal-contaminated water releases from Conveyor Belt No. 2 located over the Ashtabula River have resulted in significant direct discharges of pollutants to the Ashtabula River.

43. These coal releases from Conveyor Belt No. 2 have also fallen onto buildings, cars and the land below the conveyor, causing property damage and leaving coal dust residue along the sides of the road and in the storm water ditches, and resulting in indirect discharges of pollutants to the Ashtabula River and Lake Erie.

44. Ohio EPA issued to Norfolk Southern Corporation air permits to operate for the following operations at the Coal Dock: (1) rail car rotary dumping and conveyor transfer, including Conveyor Belt No. 2 (identified as source F001); (2) aggregate storage piles (identified as source F002); (3) plant roadways and parking areas (identified as source F003); and (4) ship and silo loading operations (identified as source F004). The permits to operate are renewals of expired permits.

45. The permits to operate require Norfolk Southern to use reasonably available control measures that are sufficient to eliminate visible emissions of fugitive dust from the coal piles.

46. The permit to operate for source F001 incorporates OAC Rule 3745-17-07(B)(1) and states that visible emissions of fugitive coal dust shall not exceed 20% opacity, as a 3-minute average.

47. The permit to operate for the coal storage piles on the west bank of the Coal Dock (source F002) incorporates OAC Rule 3745-17-07(B)(6) and states that no visible particulate emissions may occur except for 13 minutes during any 60-minute period.

48. Fugitive coal dust from the Coal Dock has deposited onto several residential homes and properties and prevented residents from enjoying their properties.

### COUNT ONE: Discharge of Pollutants from Conveyor Belt No. 2 into Navigable Waters without a Permit

49. Plaintiff incorporates paragraphs 1 through 48 of this Complaint as if rewritten herein.

50. Coal, coal slurry, coal dust and coal-contaminated water are "pollutants" as that term is defined in CWA Section 502, 33 U.S.C. § 1362.

51. Conveyor Belt No. 2 is a "point source" as that term is defined in CWA Section 502, 33 U.S.C. § 1362.

52. The Ashtabula River and Lake Erie are "navigable waters" as that term is defined in CWA Section 502, 33 U.S.C. § 1362.

53. Norfolk Southern's operation and maintenance of Conveyor Belt No. 2 results in the discharge of coal, coal slurry, coal dust and coal-contaminated water from a point source into a navigable water.

54. Norfolk Southern's discharge of pollutants from a point source to navigable waters without a proper permit is prohibited under CWA Section 301. 33 U.S.C. § 1311(a).

55. Under CWA Section 402, Norfolk Southern is required to obtain a permit from Ohio EPA before discharging any pollutants from a point source into navigable waters. 33 U.S.C. § 1342.

211188v2
32010.00004

56. By failing to obtain the necessary permit under Section 402 before it commenced the discharges of coal, coal slurry, coal dust and coal-contaminated water from Conveyor Belt No. 2 into the Ashtabula River, Norfolk Southern violated and continues to violate Sections 301 and 402 of the CWA. 33 U.S.C. §§ 1311, 1342.

## COUNT TWO:  Discharge of Pollutants from the East Bank of the Coal Dock into Navigable Waters without a Permit

57. Plaintiff incorporates paragraphs 1 through 56 of this Complaint as if rewritten herein.

58. Coal, coal slurry, coal dust and coal-contaminated water run-off from the coal operations on the east bank of the Coal Dock discharges off the Coal Dock property and into the Ashtabula River and/or Lake Erie.

59. The unloading, storage and/or handling of coal on the east bank of the Coal Dock is an industrial activity that requires a permit issued under CWA Sections 301 and 402 authorizing the discharge of storm water.

60. The discharge of pollutants from the east bank of the Coal Dock without a proper permit is prohibited under CWA Section 301. 33 U.S.C. § 1311(a).

61. Under CWA Section 402, Norfolk Southern is required to obtain a permit from Ohio EPA before discharging any pollutants and contaminated water into navigable waters. 33 U.S.C. § 1342.

62. By failing to obtain the necessary permit under Section 402 before it commenced the discharges of pollutants and contaminated water from the east bank of the Coal Dock into the Ashtabula River, Norfolk Southern violated and continues to violate Sections 301 and 402 of the CWA. 33 U.S.C. §§ 1311, 1342.

211188v2
32010.00004

### COUNT THREE: Violation of NPDES Permit

63. Plaintiff incorporates paragraphs 1 through 62 of this Complaint as if rewritten herein.

64. Upon information and belief, not all discharges of coal, coal dust, coal slurry and coal-contaminated water from the coal piles on the west bank of the Coal Dock is collected and directed to the wastewater treatment plant and discharged through Outfall 001, as required by the NPDES Permit.

65. As a result, some discharges from the coal piles on the west bank of the Coal Dock are not treated before discharge to the Ashtabula River and/or Lake Erie. Bypassing or diverting wastewater from the treatment plant is a violation of Part III.11 of the NPDES Permit.

66. Failure to comply with the terms and conditions of its NPDES Permit is a violation of CWA Section 301, 33 U.S.C. § 1311.

### COUNT FOUR: Public Nuisance

67. Plaintiff incorporates paragraphs 1 through 66 of this Complaint as if rewritten herein.

68. Since at least July, 1999, emissions from the Norfolk Southern Coal Dock have repeatedly caused and are causing a public nuisance in violation of OAC Rule 3745-15-07.

211188v2
32010.00004

## **PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations contained in paragraphs 1 through 67, above, Plaintiff requests that this Court:

A.  Declare Defendants to have violated and to be in continuing violation of the Clean Water Act, the Clean Air Act and applicable regulations;

B.  Permanently enjoin Defendants from further violations of the Clean Water Act, the Clean Air Act and applicable regulations;

C.  Order the Defendants to take appropriate actions to remedy, mitigate, or offset the harm to public health and the environment caused by the violations of the Clean Water Act and the Clean Air Act alleged above;

D.  Assess a civil penalty against each Defendant of up to $32,500 per day for each violation of the Clean Water Act and applicable regulations, as provided in 33 U.S.C. §§ 1319(d) and 1365(a), and the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 and 40 C.F.R. § 19.4.

E.  Assess a civil penalty against each Defendant of up to $32,500 per day for each violation of the Clean Air Act and applicable regulations, as provided by 42 U.S.C. §§ 7413(b) and 7604(a) and (g), and the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 and 40 C.F.R. § 19.4;

F.  Order Defendants to pay the City's reasonable attorneys fees and costs (including expert witness fees), as provided by 33 U.S.C. § 1365(d) and 42 U.S.C. § 7604(d);

211188v2
32010.00004

G.  Grant such other relief as the Court deems just and proper.

Respectfully submitted,

*[signature]*

Robert J. Karl (0042292)
J. Gregory Smith (0061728)
Sherry L. Hesselbein (0074494)
Ulmer & Berne LLP
88 East Broad Street, Suite 1600
Columbus, Ohio 43215
(614) 229-0000
Fax (614) 229-0001
bkarl@ulmer.com
gsmith@ulmer.com
shesselbein@ulmer.com

*Michael Franklin /SLH*

Michael Franklin (0030737)
City Solicitor
City of Ashtabula
Justice Center
110 West 44th Street
Ashtabula, Ohio 44004
440-992-7101
solicitor@cityofashtabula.com

## JURY DEMAND

Plaintiff, by and through the undersigned, hereby demands a trial by jury on all issues triable under law.

Respectfully submitted,

_____
Robert J. Karl (0042292)
J. Gregory Smith (0061728)
Sherry L. Hesselbein (0074494)
Ulmer & Berne LLP
88 East Broad Street, Suite 1600
Columbus, Ohio 43215
(614) 229-0000
Fax (614) 229-0001
bkarl@ulmer.com
gsmith@ulmer.com
shesselbein@ulmer.com

Michael Franklin /sLH
_____
Michael Franklin (0030737)
City Solicitor
City of Ashtabula
Justice Center
110 West 44th Street
Ashtabula, Ohio 44004
440-992-7101
solicitor@cityofashtabula.com