**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CITY OF ASHTABULA,** ) | **CASE NO. 1:09 CV 364** |
| ) | |
| Plaintiff, ) | **JUDGE DAN AARON POLSTER** |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| **NORFOLK SOUTHERN** ) | |
| **CORPORATION,** *et al.***,** ) | |
| ) | |
| Defendants. ) | |

Before the Court is Defendants' Motion to Dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction (*ECF No. 7*). For the following reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

**I. FACTS**

Defendant Norfolk Southern Railway Company and its holding company Defendant Norfolk Southern Corporation (collectively "Norfolk Southern" or "Defendants") own and operate the Ashtabula Coal Dock Facility ("Coal Dock") located in Ashtabula, Ohio. *ECF No. 1* at ¶¶ 14-15. The Coal Dock is located on the east and west banks of the Ashtabula River and is bordered to the north by Lake Erie. *Id*. at ¶ 35. Coal is delivered to the east bank of the Coal Dock in rail cars, loaded onto a conveyor belt ("Conveyor Belt No. 2") and transferred

to the west bank of the Coal Dock, where it is stored in piles before being loaded onto vessels for delivery. *Id.* at ¶ 36. The coal piles are sprayed year-round with water to suppress dust. *Id.* at ¶ 37. The run-off from the water sprayed coal piles, along with rain water and snow melt are treated at a water treatment plant before being discharged into Lake Erie. *Id.* at ¶¶ 37-38.

On November 26, 2008, the City of Ashtabula ("the City" or "Plaintiff") sent a letter ("notice letter" or "letter") entitled "Notice of Intent to Sue under Section 505 of the Clean Water Act and Section 304 of the Clean Air Act" to Defendants, copying the United States Environmental Protection Agency ("EPA"), the Ohio Environmental Protection Agency ("Ohio EPA"), and the Ohio Attorney General. *ECF No. 10-2* at 1. The notice letter alleged violations of the Clean Water Act ("CWA"), 33 U.S.C. §1251 *et seq.*, the Ohio Water Pollution Control Act, R.C. Chapter 611, the Clean Air Act ("CAA"), 42 U.S.C. §7401 *et seq.*, the Ohio Air Pollution Control Act, R.C. Chapter 3704, and their implementing regulations. *Id.* at 1. The notice letter also stated that pursuant to the CWA and CAA, the City intended to commence an action in federal court sixty days later. *Id.* at 2.

The notice letter alleged two types of water violations. *Id.* at 4. First, violations of Section 402 of the CWA, R.C. 611.04, and Ohio Administrative Code ("OAC") Rule 3745-1-04 by: 1) contaminated run-off being directly discharged into the Asthabula River and Lake Erie, illegally bypassing the Norfolk Southern treatment plant; 2) coal dust contaminated storm water from the east bank of the Coal Dock being discharged directly into the Ashtabula River; and 3) fugitive dust from the coal piles on the west side of the Ashtabula River settling on the surface of the Ashtabula River and Lake Erie. *Id.*

Second, and in violation of the same statutes and regulations, discharging coal,

coal dust, and/or coal dust process waste water into the Ashtabula River from Conveyor Belt No. 2. *Id*.

The letter also alleged two types of air violations. *Id*. at 5. In violation of OAC Rule 3745-15-07, coal dust emission from the Coal Dock creates a public nuisance by causing unreasonable damage to City residents' property. *Id*. Additionally, Defendants are not complying with their Permits to Operate because coal piles have grown so large they cannot be adequately wetted. *Id*.

On February 17, 2009, Plaintiff brought the instant action against Norfolk Southern. *ECF No. 1*. Count One alleges that Defendants violated and continue to violate Sections 301 and 402 of the CWA by failing to obtain the necessary permit before discharging coal, coal slurry, coal dust and coal contaminated water from Conveyor Belt No. 2 into the Ashtabula River. *ECF No. 1 at 9*. Count Two alleges that Defendants violated and continue to violate Sections 301 and 402 of the CWA by discharging pollutants and contaminated water from the east bank of the Coal Dock into the Ashtabula River without a permit from the Ohio EPA. *ECF No. 1 at 10*. Count Three alleges that Defendants have violated Part III.11 of their NPDES Permit and, consequently, Section 301 of the CWA, by allowing wastewater from coal piles to bypass the treatment plant before being discharged into the Ashtabula River and/or Lake Erie. *ECF No. 1 at 11*. Count Four alleges that the emissions from the Nofolk Southern Coal Dock are a public nuisance in violation of OAC Rule 3745-15-07. *Id*. Defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that Plaintiff's notice letter did not sufficiently comply with federal regulations and that Plaintiff's complaint has failed to allege facts sufficient to invoke subject

matter jurisdiction. *ECF No. 7.*

## II. ANALYSIS

Citizens, including cities, are authorized by the CWA and CAA to sue "any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 33 U.S.C. §1365(a); 42 U.S.C. §7604(a). Citizen plaintiffs may not bring a suit "prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard limitation, or order . . ." 33 U.S.C. §1365(b); 42 U.S.C. §7604(b).

EPA regulations require that a notice letter contain the following information:

1. Sufficient information to permit the recipient to identify the specific standard, limitation or order alleged to have been violated,

    2. The activity alleged to constitute a violation,

    3. The person or persons responsible for the alleged violation,

    4. The location of the alleged violation,

    5. The date or dates of such violation, and

    6. The full name, address, and telephone number of the person giving notice.

40 C.F.R. §135.3(a); 40 C.F.R. §54.3.

Failure to adhere to any of the above requirements necessitates dismissal of a plaintiff's complaint for lack of subject matter jurisdiction. *See Atl. States Legal Found., Inc. v. United Musical Instruments U.S.A., Inc.*, 61 F.3d 473, 478 (6th Cir. 1995); *Sierra Club v. City of Columbus*, 282 F.Supp. 2d 756, 763 (S.D. Ohio 2003).

Defendants allege that Plaintiff's notice letter is inadequate because it failed to provide sufficient information to identify the specific standards, limitations or orders violated and failed to adequately identify the date or dates of such violations." *ECF No. 7* at 6.

### *A. Dates of the Alleged Violations*

As an initial matter, the Court examines whether Plaintiff has adequately identified the dates of the alleged violations. Plaintiff's notice letter "alleges that [the] violations have been continuous from at least Norfolk Southern's acquisition of the Coal Dock on or about June 1, 1999 to the present and will likely continue." *ECF No. 10-2* at 4. Specifically, the letter alleges "such violations have occurred on each and every day between June, [sic] 1999, and the present." *Id.*

Relying on *Frilling v. Honda of Am.. Mfg., Inc.*, No. C-3-96-181, 1996 U.S. Dist. LEXIS 22526 (S.D. Ohio October 21, 1996),[1] Defendants argue that simply providing the time period over which the violations occurred and noting that they are "continuous" is not sufficient to meet the requirements of the notice regulations.

In *Frilling*, the plaintiff filed a complaint against the defendant owner of an engine plant for discharging polluted wastewater into a publicly owned treatment facility that subsequently released the polluted wastewater into a creek on the plaintiff's land. The *Frilling* plaintiff's notice letter asserted violations occurring on specific dates, a violation occurring on a "nearly daily basis," violations occurring on a "continuous" or "intermittent" basis, and violations occurring "some specific number of times . . . over a timeframe of roughly five years."

---

[1] This is the first of two Southern District of Ohio *Frilling v. Honda of Am. Mfg., Inc.* decisions cited in the instant opinion. The second, 101 F.Supp. 2d 841 (S.D. Ohio 1998), was a subsequent decision in the same case. References to *Frilling* without full citation are to this 1996 decision, 1996 U.S. Dist. LEXIS 22526.

*Id*. at \*5 (quotations omitted). Though the court denied the defendant's motion to dismiss the violations that allegedly occurred on specific dates, all other alleged violations were dismissed. Finding that the other alleged violations "do not appear to assist the Defendant in identifying any *specific* date or dates, or even the number of days involved," the *Frilling* court held that "[a]ll claims for relief which are based upon assertions of violations occurring on an intermittent, continuous or nearly daily basis . . . or which occurred a specific number of times over a period of several years, are *not* sufficient to satisfy this regulation." *Id*. at 6-7 (emphasis in original).

The difference between *Frilling* and the instant case is that the *Frilling* plaintiff's allegations were ambiguous about the dates. The *Frilling* defendant did not have sufficient information to determine on which exact dates the "nearly daily," "intermittent," or "continuous" violations were alleged to have occurred.

Here, however, Plaintiff's notice letter has supplied Defendants with the specific dates of the alleged violations. Plaintiff alleges that on each and every day since Defendants acquired the Coal Dock on or about June 1, 1999, Defendants have violated the CAA and CWA. That is, Plaintiff believes violations occurred on June 1, 1999, on June 2, 1999, on June 3, 1999, and so on, until the date the letter was issued. Where Plaintiff alleges that a violation has occurred on every day from a specific date of commencement, it is not required to provide all of the dates on which the violation allegedly occurred. *See Cornett v. Welding Alloys*, No. 02-42-DLB, 2003 U.S. Dist. LEXIS 27259 at \*15-16 (E.D. Ky. Nov. 26, 2003). Thus, to the extent that it asserts that describing alleged violations as occurring on each and every day is insufficient notice, Defendants' argument is rejected. However, the Court will consider Defendants' contention that Plaintiff's notice letter does not actually allege violations occurring on a daily

basis.

### B. Count One – Discharge of Pollutants from Conveyor Belt No. 2 into Navigable Waters without a Permit

In Count One of its complaint, Plaintiff asserts that "[b]y failing to obtain the necessary permit under Section 402 before it commenced discharges of coal, coal slurry, coal dust and coal-contaminated water from Conveyor Belt No. 2 into the Ashtabula River, Norfolk Southern violated and continues to violate Sections 301 and 402 of the CWA. 33 U.S.C. §§ 1311, 1342." *ECF No. 1* at ¶56.

Plaintiff's notice letter describes this violation as "failing to maintain the conveyor belt system which illegally discharges coal-contaminated water into the Ashtabula River without a valid permit and in violation of water quality standards." *ECF No. 10-2* at 3. More specifically, the notice letter alleges that "Norfolk Southern has not installed a system for properly collecting, managing and treating process waste water from Conveyor Belt No. 2 or storm water that comes in contact with coal loading, coal transferring and/or other industrial activities occurring at the east bank of the Coal Dock.." *Id*. at 4. As "Norfolk Southern has and continues to discharge coal, coal dust, and/or coal dust process waste water directly and/or indirectly to the Ashtabula River from Conveyor Belt No. 2, ... [t]hese discharges to the Ashtabula River of coal, coal dust and/or coal dust process waste water from Conveyor Belt No. 2 (both direct discharges and discharges that end up in the Ashtabula River via storm water flow) violate Section 402 of the Clean Water Act, R.C. 6111.04, and OAC 3745-1-04." *Id*.

Plaintiff's notice letter thus establishes the violation as discharging various pollutants from Conveyor Belt No. 2 into the Ashtabula River. By specifically describing the

acts it believes violate the law, and linking these acts to CWA Section 402, R.C. 6111.04, and OAC Rule 3745-1-04, Plaintiff's notice letter has sufficiently provided notice of the specific standard, limitation, or order violated.  Moreover, because Plaintiff's allegation of operating the coal dock without a permit for the Conveyor Belt Bridge is a continuous violation that occurs each and every day that the dock is operated without a permit, Plaintiff's notice letter adequately provided the dates of the alleged violations.

Count One also alleges violations of Section 301 of the CWA.  *ECF No. 1* at ¶54 ("Norfolk Southern's discharge of pollutants from a point source to navigable waters without a proper permit is prohibited under CWA Section 301.  33 U.S.C. § 1311(a)); *Id.* at ¶55 ("By failing to obtain the necessary permit under Section 402 ... Norfolk Southern violated and continues to violate Sections 301 and 402 of the CWA).  However, because Plaintiff's notice letter does not contain a single reference to Section 301, it has failed to allege the specific standard, order, or limitation violated.  *See Fitzgibbons v. Cook*, No. 1:08-cv-165, 2008 WL 5156629 at *7 (dismissing case for lack of subject matter jurisdiction where notice letter and complaint contained different CWA claims).  Accordingly, the Court does not have subject matter jurisdiction to consider Plaintiff's Section 301 claims. Defendants' Motion to Dismiss is therefore denied as to Count One allegations based on CWA Section 402, R.C. 6111.04, and OAC Rule 3745-1-04, but is granted as to any Count One allegations based on CWA Section 301.

*B.  Count Two – Discharge of Pollutants from the East Bank of the Coal Dock into Navigable Waters without a Permit*

Count Two of Plaintiff's complaint alleges that "[t]he discharge of pollutants

from the east bank of the Coal Dock without a proper permit is prohibited under CWA Section 301," (*ECF No. 1* at ¶60), and that "[u]nder CWA Section 402, Norfolk Southern is required to obtain a permit from Ohio EPA before discharging any pollutants and contaminated water into navigable waters." *Id*. at ¶61. "By failing to obtain the necessary permit under Section 402 before it commenced the discharges of pollutants and contaminated water from the east bank of the Coal Dock into the Ashtabula River, Norfolk Southern violated and continues to violate Sections 301 and 402 of the CWA." *Id*. at ¶62.

The notice letter alleges that "Norfolk Southern has and continues to discharge coal dust contaminated storm water from the east bank of the Coal Dock directly into the Ashtabula River and/or directly into the City of Ashtabula storm water system which discharges directly to the Ashtabula River" and that "[t]hese discharges of storm water from the east bank of the Coal Dock are not authorized by the Norfolk Southern NPDES permit and violate Section 402 of the Clean Water Act, R.C. 6111.04, and OAC 3745-1-04." *ECF No. 10-2* at 4.

The analysis for Count Two is identical to the analysis for Count One. Plaintiff's notice letter specifically provides that Section 402 of the Clean Water Act, R.C. 6111.04, and OAC Rule 3745-1-04 have been violated. Because operating the east bank of the Coal Dock without a proper permit for the discharge of pollutants is a daily violation, the dates of the alleged violations were provided in the notice letter. Once again, however, any allegations in Count Two brought pursuant to Section 301 of the CWA have to be dismissed because the notice letter contains no reference to this section.

### *C. Count Three – Violation of NPDES Permit*

Count Three of Plaintiff's complaint alleges that "some discharges from the coal

piles on the west bank of the Coal Dock are not treated before discharge to the Ashtabula River and/or Lake Erie," and that "[b]ypassing or diverting wastewater from the treatment plant is a violation of Part III.11 of the NPDES Permit." *ECF No. 1* at ¶¶65-66.  The "[f]ailure to comply with the terms and conditions of its NPDES Permit" is a "violation of CWA Section 301, 33 U.S.C. § 1311." *Id.*

Plaintiff's notice letter alleges that Norfolk Southern has "continuously failed to comply with the terms of its NPDES permit ... by failing to comply with the effluent limitations, monitoring and reporting requirements of the NPDES permit." *ECF No. 10-2* at 3.  Because "[n]ot all of the spray water and rain water off the coal piles at the west bank of the Coal Dock is directed to the treatment plant" there are "direct discharges into the waterways [that] are illegal bypasses of the Norfolk Southern treatment plant and violate Section 402 of the Clean Water Act, R.C. 6111.04, and OAC 3745-1-04." *Id.* at 4.

Plaintiff's complaint alleges that Defendants' failure to comply with its NPDES permit is a violation of CWA Section 301, yet once again, the only CWA section referenced in Plaintiff's notice letter is Section 402.  Because Count Three is brought under Section 301, but the notice letter does not allege a violation of Section 301, Defendants' motion to dismiss Count Three is granted.

### D.  Count Four – Public Nuisance

Count Four of Plaintiff's complaint alleges that "[s]ince at least July,[sic] 1999, emissions from the Norfolk Southern Coal Dock have repeatedly caused and are causing a public nuisance in violation of OAC Rule 3745-15-07." *ECF No. 1* at ¶68.  Specifically, "[f]ugitive coal dust from the Coal Dock has deposited onto several residential homes and properties and

-10-

prevented residents from enjoying their properties." *Id*. at ¶47.

According to Plaintiff's notice letter, Norfolk Southern has "continuously failed to comply with its PTOs and the requirements of the CAA, the Ohio Air Pollution Control Act, and accompanying regulations by causing a public nuisance and failing to prevent the emission of particulate matter and fugitive dust into the surrounding residential neighborhoods." *ECF No. 10-2* at 3. Citing the definition of a public nuisance under OAC Rule 3745-15-07, the notice letter alleges that "[t]he emission of coal dust from the Norfolk Southern Coal Dock has created a public nuisance because it has caused unreasonable damage to the City residents' property." *Id*. at 5.

Plaintiff's complaint and the notice letter specifically indicate that since June 1999 Defendants have continuously violated OAC Rule 3745-15-07, a state law provision.[2] While Defendants assert that Plaintiff's description of the coal dust storms as intermittent in its opposition brief is an admission that the violations are not continuous (*ECF No. 11* at 4), the daily violation alleged by Plaintiff is the ongoing failure to take action to prevent the coal dust storms. By alleging a violation occurring daily since June 1999, Plaintiff's notice letter sufficiently describes the dates of the allegations and the specific standards violated.

Defendants further argue that the CAA citizen suit provision does not permit a claim to be brought under OAC Rule 3745-15-07. The CAA citizen suit provision allows a person to commence a civil action on his own behalf "against any person ... who is alleged to have violated ... an emission standard or limitation under this chapter." 42 U.S.C. §7604(a). An

---

[2]Because OAC Rule 3745-15-07 is part of Ohio's State Implementation Plan it is incorporated into federal law. *Fisher v. Perma-Fix of Dayton, Inc*., No. 3:04-cv-418, 2006 U.S. Dist. LEXIS 5389 at *3 (S.D. Ohio January 27, 2006); 49 Fed. Reg. 32, 182 (Aug. 13, 1984).

emission standard or limitation is "a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis." *Id*. at §7602(k).

OAC Rule 3745-15-07 provides that "...the emission or escape into the open air from any source or sources whatsoever, of smoke, ashes, dust, dirt, grime, acids, fumes, gases, vapors, odors, or any other substances or combinations of substances, in such manner or in such amounts as to endanger the health, safety or welfare of the public, or cause unreasonable injury or damage to property, is hereby found and declared to be a public nuisance." Defendants argue that OAC Rule 3745-15-07 does not establish any identifiable limitation on the "quantity, rate or concentration" of a pollutant and therefore cannot be enforced under the CAA citizen suit provision.

While Defendants' argument has never been addressed by this Court,[3] it must be rejected based upon an examination of the plain language of CAA §7602(k) and OAC Rule 3745-15-07. OAC Rule 3745-15-07 finds the emission of pollutants "*in such amounts* as to endanger the health, safety or welfare of the public, or cause unreasonable injury or damage to

---

[3]The Southern District of Ohio has concluded both in favor of and against Defendants' position. In *Helter v. AK Steel Corp.*, 1997 U.S. Dist. LEXIS 9852 (S.D. Ohio March 31, 1997), the court, relying on *Satterfeld v. J.M. Huber Corp.*, 888 F.Supp. 1561, 1566-67 (N.D. Ga 1994), held that "vague emission prohibitions, like that contained in O.A.C. §3745-15-07 are not subject to redress by means of a citizen suit." *Helter*, 1997 U.S. Dist. LEXIS at *51; *see also Freeman v. Cincinnati Gas & Electric Co.*, 2005 U.S. Dist. LEXIS 42525 (S.D. Ohio Oct. 27, 2005). On the other hand, in *Fisher v. Perma-Fix of Dayton, Inc.*, No. 3:04-cv-418, 2006 U.S. Dist. LEXIS 5389 at *3 (S.D. Ohio January 27, 2006), the court explicitly rejected the holdings in *Helter* and *Satterfeld* because there was no basis for those decisions' reliance on Congressional intent and legislative history. *Id*. at *13. The *Fisher* court then denied a motion for judgment on the pleadings, enabling a CAA citizen suit brought under OAC Rule 3745-15-07 to proceed. *Id*. at *14; *see also Cornett v. Welding Alloys, U.S.A.*, No. 02-42-DLB, 2003 U.S. Dist. LEXIS 27259 (E.D. Ky. Nov. 26, 2003) (concluding that *Helter* and *Satterfeld* are no longer good law because *Satterfeld* relied on *Northwest Envtl. Advocates v. City of Portland*, 11 F.3d 900 (9th Cir. 1993), which was later reversed).

property" to be a public nuisance and therefore unlawful. *Id*. (emphasis added). While a numerical value is not explicitly stated, pollutants are limited to a quantity that doesn't endanger the public or cause unreasonable injury or damage to property. Because OAC Rule 3745-15-07 "limits the quantity ... of air pollutants" it qualifies as an emission standard or limitation under §7602(k) of the CAA. Plaintiff can therefore bring Count Four under a CAA citizen suit.

### *E. Remedial Action*

Plaintiff argues that regardless of any deficiencies alleged by Defendants, the notice letter must have been adequate because Defendants have taken corrective actions to address the alleged violations since the letter was issued. Plaintiff contends that in response to a January 14, 2009 notice of violation ("NOV") from the Ohio EPA regarding an "air pollution nuisance, in violation of Ohio Administrative Code (OAC) Rule 3745-15-07(A)" (*ECF No. 10-3* at 3), Defendants acknowledged allegations of "wash water dripping from the bridge into the river and onto the ONDR office" and of "fugitive dust issues from the dock, including the bridge" and that it has "been implementing measures and studying additional ways to reduce the discharge of wash water from the bridge." *ECF No. 10-4* at 3. Plaintiff argues that where the alleged violator has taken specific remedial action in response, notice is necessarily adequate. *See Sierra Club v. El Paso Gold Mines, Inc.*, 198 F. Supp. 2d 1265, 1274 (D. Colo. 2002); *Atl. States Legal Found. v. Stroh Die Casting Co.*, 116 F.3d 814, 820 (7th Cir. 1997). Defendants contend that the idea that remedial action cures notice letter deficiencies is a byproduct of a liberal interpretation of CWA pre-suit requirements, which was expressly rejected by *Frilling v. Honda of America Mfg., Inc.*, 101 F.Supp. 2d 841, 849-50 (S.D. Ohio 1998). Moreover, Defendants assert that any action taken on their part was not in response to Plaintiff's notice

letter but rather in response to the Ohio EPA.

The Court need not determine the legal issue of whether remedial action cures failure to comply with notice requirements because Plaintiff has not met its burden of demonstrating that Defendants' actions resulted from the notice letter. *Karr v. Heffner*, 475 F.3d 1192, 1206 (10th Cir. 2007) (rejecting argument that notice was sufficient where defendant took remedial action but plaintiff could "point to no facts in the record to substantiate [the] assertion"). The January 14, 2009 Ohio EPA NOV letter states that "[i]n a two-week period in June [2008], ODNR documented seven instances of coal dust splatter from the NSC conveyor onto their building. (This information was conveyed to you previously in a July 2, 2008 letter from Virginia Wilson of Ohio EPA to Kevin Hauschildt, NSRC.) Recently, Virginia Wilson was coated by a fine mist of coal dust on October 10, 2008 while witnessing a power washing episode of the coal conveyor." *ECF No. 10-3* at 4.

In a February 2, 2009 letter, Defendants respond that "you are alleging a potential water pollution issue, not an air pollution issue. This is confirmed by the reference to a letter [the July 2, 2008 letter from Virginia Wilson of Ohio EPA] NSR previously received from Ohio EPA addressing the same events with similar allegations, but made in the context of a water discharge concern ... As Ohio EPA is aware, NSR has implemented a number of measures *over the years* including a wash water collection system and a bridge cover to minimize contact of stormwater with coal materials. Additional methods and efforts to control discharges from the bridge have been part of an ongoing dialogue with Ohio EPA for *most of the past year* and will further constitute a portion of the remedial activities we anticipate will be part of the order under discussion with the agency." *ECF No. 10-4* at 3-4 (emphasis added). Thus, it is clear from

-14-

Defendants' February 2, 2009 letter to the Ohio EPA that the remedial action taken by Defendants was part of an ongoing effort to cooperate with the Ohio EPA that had commenced well before Plaintiff's November 26, 2008 notice letter.  As Defendants' actions were not a response to Plaintiff's allegations they cannot be construed to cure deficiencies in Plaintiff's notice letter.

### *F.  Failing to Allege Facts Sufficient to Invoke Subject Matter Jurisdiction*

Finally, Defendants argue that Plaintiff's action should be dismissed for failing to allege sufficient facts in the complaint to establish subject matter jurisdiction.

Plaintiff's complaint asserts that "[j]urisdiction over this action is conferred by 28 U.S.C. §1331 (federal question), 33 U.S.C. § 1365(a) (CWA jurisdiction), and 42 U.S.C. § 7604(a) (CAA jurisdiction)." *ECF No. 1* at ¶20.  Federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Walbridge Aldinger Co. v. City of Detroit*, 296 Fed App'x 527, 531 (6th Cir. 2008).  Here, Plaintiff's complaint clearly sets out facts raising a dispute of federal law that invokes subject matter jurisdiction in this Court.  Among the various well-pleaded facts in Plaintiff's complaint presenting a federal question are that "Norfolk Southern does not possess a NPDES permit for any operations on the east bank of the Coal Dock or for Conveyor Belt No. 2," (*ECF No. 1* at ¶40), "[c]oal, coal dust, coal slurry, and coal-contaminated water releases from Conveyor Belt No. 2 located over the Ashtabula River have resulted in significant direct discharges of pollutants to the Ashtabula River," (*Id. at ¶*42), and "[f]ugitive coal dust from the Coal Dock has deposited onto several residential homes and properties and prevented residents from enjoying their properties." *Id*. at ¶47.  These facts are then incorporated into allegations of violation of

federal law in Plaintiff's descriptions of Counts One through Four.  Thus, Plaintiff has easily met its burden of pleading facts sufficient to invoke subject matter jurisdiction and Defendants' argument must be rejected.

## III.  CONCLUSION

For the reasons discussed supra, Defendants' Motion to Dismiss (*ECF No. 7*) is **GRANTED IN PART** and **DENIED IN PART**.  Defendants' motion to dismiss Counts One and Two are granted only on CWA Section 301claims.  Defendants' motion to dismiss Count Three is granted in its entirety.  Defendants' motion to dismiss Count Four is denied.  Defendants' motion to dismiss the entire complaint for failure to allege facts sufficient to invoke subject matter jurisdiction is denied.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster     June 16, 2009*
**Dan Aaron Polster**
**United States District Judge**